UNITED STATES, Appellee

v.

Donald P. KOSEK, Staff Sergeant
U.S. Air Force, Appellant.

No. 94–6001.
CMR Misc. No. 93–23.

U.S. Court of Military Appeals.

Argued Aug. 11, 1994.

Decided Sept. 29, 1994.

For Appellant: *Captain Joel R. Reifman*
(argued); *Colonel Jay L. Cohen* and *Lieutenant Colonel Frank L. Spinner.*

For Appellee: *Captain Timothy G. Buxton* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Thomas E. Schlegel.*

*Opinion of the Court*

GIERKE, Judge:

Appellant was arraigned before a general court-martial on charges alleging wrongful possession, use, and distribution of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Prior to entry of pleas, the military judge granted a defense motion to suppress all evidence seized from appellant and all oral and written statements made by appellant. The Government appealed in accordance with Article 62, UCMJ, 10 USC § 862, and the Court of Military Review reversed the decision of the military judge. 39 MJ 983 (1994). Thereafter, this Court granted review of the following issues raised by appellate defense counsel:

I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN ITS RULING ON AN ARTICLE 62 APPEAL BY WRONGFULLY REINTERPRETING AND ADDING TO FACTUAL DETERMINATIONS OF THE TRIAL JUDGE WHICH WERE NOT CLEARLY ERRONEOUS AND, OVERALL, BY SUBSTITUTING ITS JUDGMENT FOR THAT OF THE TRIAL JUDGE.

II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED BY RULING ON A LEGAL ISSUE THAT WAS NOT DECIDED BY THE TRIAL JUDGE AND, THEREFORE, WAS NOT REVIEWABLE UNDER ARTICLE 62, UCMJ.

III

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED BY REVERSING THE RULING OF THE MILITARY JUDGE THAT ALL EVIDENCE OBTAINED AS THE RESULT OF AN ORIGINAL UNWARNED ADMISSION AND ILLEGAL SEARCH WAS PRESUMPTIVELY TAINTED, AND BY SUBSEQUENTLY RULING THAT SAID DERIVATIVE EVIDENCE WAS VOLUNTARILY OBTAINED, GIVEN THE TOTALITY OF THE CIRCUMSTANCES.

The military judge's essential findings of fact, legal analysis, and conclusions of law are set out verbatim in the opinion of the court below. 39 MJ at 984–86. Appellant was suspected of involvement in illegal drugs. A search of his home revealed a receipt for a handgun, a .44 Magnum Colt Anaconda, but no drugs. After returning from an overnight trip to New York City, where the agents suspected that he had purchased drugs, he was approached in a bar by two agents of the United States Air Force Office of Special Investigations (OSI). The OSI agents asked appellant to accompany them outside to a parking lot.

Before advising appellant of his rights, one agent began a "preamble," telling appellant that they as well as other law enforcement agencies were aware of his illegal activities. Before the agent completed his "preamble," appellant became nervous and began patting the upper pockets of his tight-fitting leather jacket. At the same time, while one agent continued his "preamble," the other agent began patting down appellant.

When appellant reached into his jacket pocket, both agents grabbed his wrist, and one agent asked, "Where is it?" Appellant produced a small round container and a straw containing a "white residue" and asked, "You mean this?" An agent took the container and the straw, opened the container, and saw that it contained white powder.

The military judge observed appellant wearing his leather jacket in the courtroom, with the small round container in the pocket. The photographs in the record of trial clearly show the bulge and outline of a small round container in the pocket of the jacket.

Appellant accompanied the agents to his home in an OSI vehicle. He was not handcuffed or otherwise restrained. He subsequently consented to searches of his home

and his automobile and consented to urinalysis. Before signing the written consent form, appellant objected to the heading which recited that he was suspected of use, possession, and distribution of a controlled substance. After the word "distribution" was crossed out, he signed the form.

After being advised of his rights, he provided an oral statement which was reduced to writing, but he refused to sign the written statement without first consulting with a lawyer.

Appellant testified that he "got nervous" while in the parking lot of the bar with the OSI agents, and he starting "patting" himself, looking for his cigarette lighter. When he put his hand in his jacket pocket and the OSI agent asked, "Where is it?," appellant "figured he was looking for cocaine." He testified that, during the OSI interrogation after the search of his vehicle and home, he was "a nervous wreck." When asked why he "cooperate[d] so freely with the OSI" agents, appellant testified:

> It was the color of authority type thing. They had the cocaine already; you know, they opened the container; they had it; and they were telling me, just sign this; it'll make it easier for you if you sign this. You need to sign this, that's what they told me.

On cross-examination, appellant admitted telling the OSI agents that he had decided to get caught so that he "could get help" for his cocaine problem. He admitted that the OSI agents were "very professional" during the entire evening, but asserted that he cooperated because he was "very scared."

After both OSI agents and appellant had testified, the military judge asked if the Government was "conceding" that appellant's production of the container and straw were testimonial acts obtained in violation of Article 31, UCMJ, 10 USC § 831. The following dialogue ensued:

> MJ: Now, I take it the government is conceding that the statement, the initial statement, made by taking out the—
> TC: Whereas in, you mean this—
> MJ: You mean this, is violative to [sic] Article 31.

> TC: Yes, Sir, based on case law, I believe, that was an interrogation that called for possibly incriminating evidence.
> MJ: Right. So that issue is not before me. That's really outside the case.
> TC: Correct.
> MJ: Alright. I want to make sure the parties cover, I imagine you are, whether the opening of the container was a lawful search.
> TC: We'll concede that. The first container seized from him?
> MJ: Right.
> TC: We would concede that's gone. That's gone.
> MJ: That's gone. That is not a lawful search.
> TC: The black container and the straw? That's gone.
> MJ: Alright. Then we are left with the consequences of the opening of the container. . . .

During argument on the motion to suppress, the military judge asked counsel for both sides to comment on inevitable discovery, but he made no rulings in that regard. Thereafter, the military judge granted the motion to suppress. In his written ruling, the military judge stated that "[t]he question, 'where is it?,' [was] an interrogation"; that appellant's "production of the container and the straw" was "a statement taken" in violation of Article 31; and that "the initial consent to search, his subsequent consent to search, and confession, derived from the improperly obtained statement." 39 MJ at 986 ¶¶ 2, 3, 4.

The first two granted issues attack the methodology of the Court of Military Review in reviewing the military judge's ruling. The third issue attacks the decision of the Court of Military Review on its merits. After reviewing the record of trial, including the military judge's findings of facts, legal analysis, and conclusions of law, we conclude that the military judge's findings of fact and conclusions of law are incomplete and ambiguous. Accordingly, the case must be remanded to the military judge for further proceedings.

Starting with the question, "Where is it?," we are unable to determine whether the military judge ruled that the question was an interrogation for which an Article 31 warning would be required or whether he merely accepted the Government's concession as a premise for his rulings on the derivative evidence. In this regard, we note the military judge's comment, "So that issue is not before me[,]" and trial counsel's response: "Correct." Notwithstanding this exchange, the military judge's ruling includes a conclusion that "[t]he question 'where is it?' is an interrogation." 39 MJ at 986 ¶ 2.

▮▮▮▮ Whether an interrogation occurred is a question of law, reviewable *de novo* by the Court of Military Review and this Court. Even though the Government did not appeal the military judge's characterization of the events as an interrogation, the question whether an interrogation occurred is an essential predicate question of law, whose answer determines what legal standard applies to the derivative evidence. In this regard, we note that in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Supreme Court held that the public safety exception would permit police to ask a suspect where his weapon was located before giving rights' warnings. *See Fleming v. Collins,* 954 F.2d 1109 (5th Cir.1992) (en banc); *United States v. Brady,* 819 F.2d 884 (9th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988); *United States v. Castellana,* 500 F.2d 325 (5th Cir.1974) (en banc). *See also Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (probable cause for arrest), *cited with approval* in *Illinois v. Gates,* 462 U.S. 213, 242–44, 103 S.Ct. 2317, 2334–35, 76 L.Ed.2d 527 (1983); *Alabama v. White,* 496 U.S. 325, 327, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990) ("reasonable suspicion" for investigative stop).

Turning to the next question, whether appellant's production of the container and straw were testimonial acts, we again note that the military judge first observed that this issue was not before him, but then included in his written conclusions of law a statement that "[t]he accused's production of the container and the straw is a statement taken as a result of an interrogation...." 39 MJ at 986 ¶ 3. Whether the military judge changed his mind and decided to rule on this question needs to be clarified. *See United States v. Corson,* 18 USCMA 34, 35, 39 CMR 34, 35 (1968) (petty officer's order, "I think that you know what I want, give it to me," followed by surrender of marijuana cigarettes violated Article 31); *but see United States v. Dionisio,* 410 U.S. 1, 5–6, 93 S.Ct. 764, 767, 35 L.Ed.2d 67 (1973) (voice exemplar not a "statement"); *United States v. Lloyd,* 10 MJ 172, 175 (CMA 1981) (handwriting exemplar not a "statement"); *United States v. Armstrong,* 9 MJ 374 (CMA 1980) (blood sample not a "statement"); *Murray v. Haldeman,* 16 MJ 74 (CMA 1983) (urine specimen not a "statement").

The military judge raised the question whether the container and straw would have been inevitably discovered, but did not resolve the issue. In this regard we note the testimony that one of the OSI agents was already patting down appellant's jacket when appellant reached into his pocket. The issue of inevitable discovery must be resolved to determine whether the military judge correctly concluded that the container and straw were tainted evidence. Even if the OSI agent's opening of the container exceeded the scope of a stop-and-frisk, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), left unanswered is the question whether discovery of the contents of the container was inevitable after seizure of the straw on which a white powdery residue was in plain view. While the military judge's suppression of the container and straw as tainted evidence was not appealed by the Government, the military judge's legal basis for treating the other evidence as tainted is an essential predicate question for deciding whether he correctly determined that all derivative evidence was tainted.

▮▮▮ The record before us contains no ruling by the military judge on the question of law whether the question "where is it?" and appellant's production of the container and straw constituted a violation of appellant's Fifth Amendment right to be protected from

compulsory self-incrimination or was a mere technical violation of Article 31. *See Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The question whether a statement was actually coerced is a question of law, reviewable *de novo. See United States v. Martinez,* 38 MJ 82, 86 (CMA 1993) (upholding military judge's determination that confession was coerced). Accordingly, it would have been proper for the court below to review *de novo* a determination that appellant's production of the container and straw were coerced, had the military judge so ruled.

Although the military judge concluded that appellant was "intimidated" by the agent's "preamble," he did not determine whether appellant's resistance was overcome by actual coercion, as that term is used by the Supreme Court. *See Oregon v. Elstad, supra* at 314, 105 S.Ct. at 1296 (referring to "deliberately coercive or improper tactics"); *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (setting out pre-*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), standards for determining whether a statement was "coerced"). Findings of fact and a conclusion of law regarding the issue whether there was actual coercion are critical predicates to resolving the matter of admissibility of the derivative evidence.

 Next, we observe that the military judge's findings of fact recite that "the accused executed a voluntary consent to search his person, automobile and house...." 39 MJ at 985 ¶ 7. Whether an accused consented to a search is a question of fact. *United States v. Wallace,* 11 MJ 445, 448 (CMA 1981). A military judge's determination that consent to a search was voluntary should not be disturbed on appeal unless it is unsupported by the evidence or clearly erroneous. *United States v. Middleton,* 10 MJ 123, 133 (CMA 1981). The question of consent is resolved by examining "the totality of the circumstances." *United States v. Goudy,* 32 MJ 88, 90 (CMA 1991). *See also United States v. Murphy,* 39 MJ 486, 489 (CMA 1994).

If actual coercion prompted appellant's production of the container and straw, then the military judge's finding of fact regarding his voluntary consent to the search is difficult to reconcile with the military judge's conclusion that "the initial consent to search, subsequent consent to search, and confession, derived from the improperly obtained statement." 39 MJ at 986 ¶ 4. Clarification is needed to reconcile what appears to be an inconsistency between the finding of fact regarding voluntary consent and the conclusion of law regarding the unbroken chain of coercion starting with the question, "Where is it?"

Finally, the record reflects that the military judge may have used the "presumptive taint" test of *United States v. Ravenel,* 26 MJ 344, 350 (CMA 1988), to determine admissibility of the derivative evidence. Thus, it appears that the military judge may have used the wrong legal standard in determining admissibility of the derivative evidence. *See United States v. Phillips,* 32 MJ 76, 79 (CMA 1991) (rejecting "presumptive taint" test for mere technical violations of Article 31). *See generally United States v. Marquardt,* 39 MJ 239 (CMA 1994) (taint not presumed—*id.* at 241; "exclusionary rule would not apply if there is an 'independent source'"; "the connection with the inadmissible evidence" attenuated; "or the evidence would have been inevitably discovered"). *Id.* at 240 (citations omitted). *Cf. Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975) (admissibility of confession after illegal arrest determined by "temporal proximity of" illegal arrest and subsequent confession, "presence of intervening circumstances," and "particularly, the purpose and flagrancy of the official misconduct").

 In light of the foregoing, we hold that the Court of Military Review erred in that it exceeded the scope of review under Article 62 by making rulings of law on issues either not decided by the military judge or on which the military judge's rulings were ambiguous or incomplete. The appropriate remedy for incomplete or ambiguous rulings is a remand for clarification.

The decision of the United States Air Force Court of Military Review and the ruling of the military judge—that "the initial consent to search, his subsequent consent to search, and confession, derived from the improperly obtained statement"—are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to the military judge for reconsideration of that ruling in light of the preceding discussion.* The reconsideration may include opportunity for the parties to present additional evidence and argument. Thereafter, the military judge shall make essential findings of fact and conclusions of law so that the record will reflect the necessary predicate facts and applicable legal principles underlying the military judge's ruling. Thereafter, the trial may proceed or the Government may invoke Article 62, Uniform Code of Military Justice, 10 USC § 862, as appropriate.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.

---

* Since this is an ongoing trial, the military judge retains the authority to reconsider any other ruling on his own motion or upon request of a party, such as his rulings in connection with the question, "Where is it?," the round container, and the straw. *See* RCM 905(f), Manual for Courts–Martial, United States, 1984.