**UNITED STATES**

v.

**Steven D. LAMINMAN, Damage Controlman Third Class.**

**CGCMS 0081.**

**Docket No. 001–62–94.**

U.S. Coast Guard Court of Criminal Appeals.

14 Oct. 1994.

Trial Counsel: LT Brian Judge, USCG.

Assistant Trial Counsel: LT Steven D. Poulin, USCG.

Detailed Defense Counsel: LT Kurt Grunawalt, JAGC, USNR.

Civilian Defense Counsel: Greg English, Esquire.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LT John F. Koeppen, USCG.

Before En Banc, BAUM, BRIDGMAN, FEARNOW, O'HARA, and WIESE, Appellate Military Judges.

BAUM, Chief Judge:

This is a Government appeal of the trial judge's dismissal of all charges and specifications for lack of speedy trial. The defense had moved for dismissal based on violations of Article 10, UCMJ,[1] and Rule for Courts–Martial (RCM) 707. After considering written pleadings, hearing witnesses, and argument by counsel, the judge made findings of fact incorporating the undisputed portions of a chronology of events submitted by the Government.[2] That chronology reveals that the

---

**1.** 10 U.S.C. § 810; hereinafter Article refers to the Articles of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 801 et seq.

**2.** The better practice would have been for the parties to enter into a stipulation of fact as to the undisputed portions and then to present evidence

on those relevant matters upon which there was disagreement. However, in light of our disposition of this case, we need not probe further what is sufficient evidentiary basis for a speedy trial motion.

Accused was under one form of restraint or another continuously from 10 December 1993 until the trial began on 25 April 1994, for a total of 137 days. Nevertheless, the judge found that the trial had commenced within the 120 days allowed by RCM 707, after subtracting 21 days for which the Government was deemed not accountable as a result of delay initiated by the defense. The Government contended it was not accountable for other days also, which the defense disputed. However, the judge concluded that even by the Government's own calculations there were 109 days of delay while the accused was confined. Although she found intervals that were reasonable, the judge concluded that, overall, there was a lack of reasonable diligence by the Government in bringing the accused to trial, necessitating dismissal under Article 10. It is this decision that the Government has appealed pursuant to Article 62, 10 U.S.C. § 862.

# I

## The Standard of Review for Government Appeals

█ Under the terms of Article 62, this Court in this instance may act only with respect to matters of law. Our standard of review is set forth in *U.S. v. Burris*, 21 M.J. 140, 144 (CMA 1985), which also involved a government appeal of a dismissal for lack of speedy trial:

> When a court is limited to reviewing matters of law, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are "fairly supported by the record." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983), quoting 28 U.S.C. § 2254(d)(8). "[T]o give due deference to the trial bench," a determination of fact "should not be disturbed unless it is unsupported by the evidence of record or was clearly erroneous." *United States v. Middleton*, 10 M.J. 123, 133 (CMA 1981).

# II

## Article 10    Speedy Trial

Article 10 provides: "When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." As noted in *U.S. v. Kossman*, 38 M.J. 258, 259 (CMA 1993), "the drafters of Article 10 made 'no provision as to hours or days' in which a case must be prosecuted...." Without such guidance, the courts grappled for years with determining exactly what Article 10 required, finally settling upon a "reasonable diligence" test as articulated in *U.S. v. Tibbs*, 15 USCMA 350, 353, 35 CMR 322, 325 (1965):

> It suffices to note that the touch stone for measurement of compliance with the provisions of the Uniform Code is not constant motion, but reasonable diligence in bringing charges to trial. Brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive.

Then, in 1971, The Court of Military Appeals decided to replace that test with one setting out a finite number of days, thereby, filling the gap left by the initial drafters of Article 10. This was accomplished in *U.S v. Burton*, 21 USCMA 112, 44 CMR 166 (1971), which created a presumption of an Article 10 violation when pretrial confinement exceeded three months. That presumption placed a heavy burden on the Government to show diligence in proceeding to trial. Absent such a showing, charges were to be dismissed. Later, in *U.S. v. Driver*, 23 USCMA 243, 49 CMR 376 (1974), the three-month period was clarified to mean 90 days.

Ten years later, the Manual for Courts–Martial, 1984, incorporated in RCM 707(d) and (e) a modified *Burton/Driver* rule which discarded the rebuttable presumption of an Article 10 violation, by simply requiring dismissal of charges if pretrial confinement exceeded 90 days, after subtracting certain expressly provided for exempted periods. That Rule allowed 120 days of delay in all other cases not involving pretrial confinement. Subsequently, in 1991, RCM 707 was changed in several ways, one of which was to delete the 90–day provision for confinees and to include them among those subject to 120 days of delay. The remedy was also modi-

fied to allow for dismissal with, or without, prejudice, depending on whether certain criteria were met.

On 29 September 1993, the speedy trial rules for those in arrest or confinement prior to trial were again modified by *U.S. v. Kossman, supra,* which expressly overruled *Burton/Driver.* By that action, the Court appears to have reinstituted the pre-*Burton* standard of "reasonable diligence" as articulated in the previous quote from *U.S. v. Tibbs, supra.* In the process, however, the Court declared with respect to RCM 707 that the President, in promulgating that Rule, cannot overrule or diminish an Act of Congress or diminish the Court of Military Appeals' interpretation of such an Act. The Court went on to say:

> Thus, in the area of subconstitutional speedy trial, Article 10 reigns preeminent over anything propounded by the President. If the requirements of Article 10 are more demanding than a presidential rule, Article 10 prevails. Merely satisfying lesser presidential standards does not insulate the Government from the sanction of Article 10.

*U.S. v. Kossman,* 38 M.J. at 261. The Court went on to note that the 102–day delay in that case apparently satisfied RCM 707, but the question of Article 10 compliance remained to be answered on remand.

We have a similar situation in this case. RCM 707 was determined by the judge to have been satisfied, but Article 10 was found to have been violated. In reaching her conclusion with respect to Article 10, the judge said: "The test as I see it is reasonable diligence by the government pursuing the case per *U.S. v. Kossman,* 38 M.J. 258, specifically, *Id.* at 262, in which the *Kossman* court cites *U.S. v. Tibbs,* 15 U.S.C.M.A. 350, 35 C.M.R. 322, a 1965 case. By that standard, I am going to dismiss the charges." R. 3 (April 26, 1994). Since all of the events in this case occurred after *U.S. v. Kossman,* we agree that the judge correctly used the law before *Burton,* as revived by *Kossman.* Moreover, as reaffirmed by *Kossman* at 38 M.J. at 262, the dismissal which she ordered for violation of Article 10 is with prejudice.

## III

## The Burden of Proof

Before determining whether the judge's conclusion is supported by the record and not clearly erroneous, we must first look to see who had the burden of proof on the motion to dismiss. At trial, the prosecution stated that the Government had the burden with respect to all motions that had been raised, which included the speedy trial motion, and the defense concurred. R. 124 (April 25, 1994). Accordingly, under both counsels' interpretation of procedural requirements, a failure of the evidence would be to the Government's disadvantage, not the defense's.

The Government argued before this Court that, notwithstanding the trial counsel's acceptance of the burden with respect to this matter, the judge erred as a matter of law in applying such a procedural rule, rather than the general rule annunciated in RCM 905(c)(2)(A): that the burden of persuasion on any factual issue necessary to the resolution of a motion is on the moving party. The Government acknowledges that RCM 905(c)(2)(B) clearly places the burden of persuasion upon the prosecution with respect to a motion to dismiss for denial of the right to speedy trial under RCM 707, but argues that this exception to the general rule does not apply to motions to dismiss for violations of Article 10 since *Kossman* has removed such issues from the ambit of RCM 707. We disagree. Whatever the effect of *Kossman,* it has not been to change the longstanding procedural rule on burden of proof or persuasion for speedy trial motions.

The President, in the exercise of his Article 36 authority to prescribe procedural rules, placed the burden on the Government twenty-five years ago in the 1969 Manual for Courts–Martial (Revised) [MCM 1969]. Both paragraphs 68i and 215e, MCM 1969, relate to speedy trial motions. Paragraph 68i states: "When the accused moves for a dismissal of certain charges on the ground that there has been an unreasonable delay as to those charges, the prosecution has the burden of establishing that the delay was not unreasonable." Paragraph 215e states: "When the accused's right to a speedy trial is

in issue, the prosecution has the burden of accounting for the time which it took to bring the accused to trial." In 1984, this exception to the general rule was incorporated into RCM 905(c), according to the analysis of Rule 905 in Appendix 21, MCM 1984. Moreover, when RCM 905(c)(2)(B) refers to a denial of the right to a speedy trial under RCM 707, it is a shorthand way of relating to all speedy trial rights. This interpretation is confirmed by the analysis of RCM 707 in Appendix 21 which says that, "The [RCM 707] rule is intended to protect the speedy trial rights under the sixth amendment and Article 10. . . ." Accordingly, it is our conclusion that RCM 905(c)(2)(B) places the burden of proof on the prosecution whenever the defense moves to dismiss for lack of speedy trial, whether the motion is framed under the terms of Article 10 or RCM 707. This procedural rule was unaffected by the *Kossman* decision.

## IV

### The Trial Judge's Findings

■ In assessing the trial judge's findings of fact, we must look first at the offenses, when they arose, and how the Government proceeded once they became known. The charges include assault of the Accused's wife by grabbing her hair and arm and throwing her around the room; communicating a threat to kill his wife; wrongful appropriation of a government motor vehicle; violation of a lawful general regulation by wrongfully having in his possession in a Coast Guard unit dangerous weapons, to wit: a Colt .44 handgun and forty eight rounds of .44 caliber ammunition, a sheath knife with a six and one half inch blade, and two switchblade knives with four inch blades; and wrongful making and possessing three pipe bombs at the accused's private residence in Upper Marlboro, Maryland. The pipe bomb and other weapons offenses were also set out in several alternative specifications. All of the charged offenses are alleged to have occurred on 10 December 1993, which is also the date the Government became aware of the offenses, after the Accused's wife made accusations against him to Bolling Air Force Base security police. Upon notification by the Air Force, Coast Guard Intelligence (CGI) agents took the Accused from his duty station, the Coast Guard Exhibit Center in Forestville, Maryland, to Bolling Air Force Base, Washington, D.C., for questioning on 10 December. When the Air Force police were finished, the Accused was interviewed further on 10 December at CGI's Washington Field Office. Also that day, CGI agents picked up a .44 caliber gun and ammunition, along with a sheath knife and two switchblade knives, found by a supervisor at the Exhibit Center. That evening, the Accused was taken to Prince George's County, Maryland, for an interview by members of the County Fire Department. Those authorities obtained a search warrant from a Prince George's County judge to search the Accused's home for pipe bombs, which were found and neutralized by the Fire Department's bomb squad. Thereafter, the Accused was arrested, charged, and held on $10,000 bond in Prince Georges County in the early morning hours of 11 December 1994.

At that point, investigation of the charged offenses was substantially complete. There were other accusations by the Accused's wife of assault on her in July and August of 1993 in Hamilton, Ohio, and Alexandria, Virginia, which, according to the Government, required further investigation, but the resultant specifications were withdrawn before trial commenced on 25 April 1994. In any event, the Government was aware of all allegations against the accused by 11 December 1993 when he was charged and jailed by civilian authorities in Maryland. On 13 December, those authorities released the Accused to the Coast Guard, whereupon he was transported to the National Naval Medical Center (NNMC), Bethesda, Maryland, for a psychiatric evaluation. On 15 December, the Accused was released from NNMC and was placed by the Coast Guard in pretrial confinement at the Naval confinement facility in Philadelphia, Pennsylvania. Subsequently, on 10 January 1994, he was transferred to the Marine Brig at Quantico, Virginia, and remained there until his trial commenced on 25 April 1994.

The judge's chronology of events, which she found as fact[3], is attached as an Appendix. The chronology reflects that charges were preferred on 10 January 1994, a defense counsel detailed on 21 January, and an officer appointed on 3 February to conduct an Article 32 investigation. The Article 32 hearing, originally contemplated for 15 February, was delayed until 8 March. The initial delay was requested by defense counsel until 1 March, but at that point the investigating officer and Government counsel were not available until 8 March, prompting the convening authority to approve the entire period of delay, which the judge charged to the defense. The investigation was held on 8 March and the report completed the next day, but the convening authority did not receive the report until six days later on 15 March, after it was placed in the regular mail system.[4] The Article 34 advice was provided the convening authority on 22 March and charges were referred to a general court-martial on 8 April, after the defense counsel submitted a written demand for speedy trial the day before. On 11 April, a docket request was submitted, an RCM 802 conference held, and the trial set for 25 April, the date requested by the Government.

At trial, no evidence was proffered by the Government explaining the delays in preferring charges, detailing of a defense counsel, appointing of an Article 32 investigating officer, or the setting of an initial date for the Article 32 hearing. In that regard, the judge had the following to say in her written "Article 10: Preliminary Findings"—

> I find that the period from 10 December to 10 January was used for investigation and drafting charges.
>
> I find that the period from 11 January to 3 February was used to decide to conduct an Article 32 Investigation, find an officer to conduct that investigation, and assign a Government representative, as well as to detail Defense Counsel. *There is no evidence of what was involved in those activities;* I have no reason to believe that they were unusually complicated or that officials making the decisions were unusually unavailable due to operational or other pressing matters. *Further, there is no evidence of the reason(s) why the Article 32 Investigation was scheduled for 15 February, twelve days later.*

Appellate Exhibit XII at p. 4 (emphasis added).

---

**3.** See the discussion at footnote 2.

**4.** For the period after completion of the Article 32 Investigation, the judge gave particular attention to the fact that the investigative report was not transmitted by overnight delivery service so that it would have reached the convening authority at least two working days earlier. In her ultimate findings, the judge concluded that failure to transmit the report expeditiously constituted a lack of reasonable diligence and evidence of a non-diligent, or negligent, attitude on the part of the Government during the case. At first glance, this conclusion might appear to place an undue emphasis on two days out of an overall delay of 109 days, for which the Government was accountable. It must be stated, however, that at the time the investigative report was completed the Accused had already been confined for 90 days, or as the judge put it, "about 64 days of confinement, even by the government's calculation". R. 4 (April 26, 1994). In the eyes of the trial judge, expedited action was called for at that point, and we agree that such a conclusion is entirely reasonable and supported by the evidence. Contrary to the views expressed by Judge Bridgman in his dissent, we do not believe that requiring expedited action at some point necessarily conflicts with the standard in *U.S. v. Tibbs, supra.* When an accused has been confined for a lengthy period, as in this case, reasonable diligence may call for expeditious processing. In this regard, we do observe that the Article 32 officer expeditiously completed the report in one day, which certainly reflected an appreciation for the need for dispatch.

If the failure to transmit the report by a means more rapid than ordinary mail were the only indication of lack of reasonable diligence, we would have to find the dismissal of charges clearly erroneous. In our view, however, the judge saw that shortcoming as merely reflecting an attitude by the Government inconsistent with reasonable diligence, which permeated the entire process. In effect, that is what she said:

> I think that the nondiligent attitude of the government is really exemplified by the six-day transmittal of the 32 report.... Expeditious handling would be indicated at that point with due regard for the fact that the accused was confined at the time.
>
> Now that two days I am talking [about] in and of itself is not so significant, but it just shows you that the government had no regard for the fact that the man was confined.

R. 6 (April 26, 1994). We believe this quote is more indicative of the judge's intended meaning than the literal reading Judge Bridgman has given to another quote.

Before submitting her written findings, the judge stated on the record that, "the total picture is really one that I can't find is marked by reasonable diligence." R. 4 (April 26, 1994). The basis for that conclusion was stated in the following manner:

So two weeks to put on a court martial is not bad, after he [the Accused] asked for the speedy trial, but the period before that is what troubles me.

The thing is that the meager evidence on the reasons for why it took so long—I mean, it is very meager evidence, and it does not convince me that the government was pursuing the case with reasonable diligence.

R. 5 (April 26, 1994).

The fact that the Government failed to present evidence explaining the reasons for the various delays in charging the accused, ordering the Article 32 investigation, detailing a defense counsel, and in commencing the Article 32 hearing at the outset, left the trial judge without evidence to conclude that the Government acted with reasonable diligence during these periods. Of significance, was the judge's express finding concerning a period in excess of a month, from 11 January to 15 February. In that regard, she stated: "I specifically find that there is insufficient evidence to support a conclusion that the Government was pursuing the case with reasonable diligence." Appellate Exhibit XII at p. 5. That, coupled with periods from 10 December to 10 January and 15 March to 8 April, and the failure to expeditiously transmit the Article 32 report, led the judge to her ultimate finding, "that the Government did not pursue this case with reasonable diligence." *Id.*

Since the Government had the burden to produce evidence demonstrating due diligence, its failure to meet that burden justified the judge's adverse findings and resultant dismissal of charges. Consequently, there is no basis for this Court to disturb the judge's findings and the ruling that followed.[5] We cannot say that the judge erred as a matter of law in granting the defense motion to dismiss for violation of Article 10, UCMJ. The Government's appeal is denied.

Judge Wiese concurs.

O'HARA, Judge (concurring):

I agree with the majority opinion, but I write separately to voice concern about the suggestion in the dissents that we should permit this issue to be relitigated under the circumstances.

The purpose of a government appeal is to permit a prosecution to proceed where the government's good faith efforts were thwarted at trial by an erroneous application of the law or an irrational interpretation of the evidence as a whole. Its purpose is not to give the government another chance when the prosecution brought the situation upon itself. This is particularly so when the prosecution also fails, as in this case, to timely request reconsideration under RCM 905(f) with a proffer of evidence which if proven would likely result in a decision more favorable to the government. With courts' dockets already congested, I am unsympathetic to providing remedies for prosecutorial dereliction, which will only exacerbate the situation by permitting piecemeal litigation.

BRIDGMAN, Judge (dissenting):

It is with some regret that I dissent from the majority. This case is not an exemplar

---

5. Judge Cox said it best in his concurring opinion in *U.S v. Vangelisti*, 30 M.J. 234, 241 (CMA1990): "if a military judge's finding of fact is supported by the evidence of record (or lack thereof), then it shall not be disturbed on appeal taken under Article 62, Uniform Code of Military Justice, 10 USC § 862. *United States v. Burris*, 21 M.J. 140 (CMA1985)." That is exactly the situation we have here, findings by the judge that are supported by a lack of evidence of reasonable diligence by the government. Rather than deny the government's appeal on this basis, Judge Fearnow's dissent suggests that a hearing of the kind utilized in *U.S. v. DuBay*, 17 USCMA 147,

37 CMR 411 (1967) would be appropriate to develop missing evidence. To the contrary, we believe that use of a *DuBay* hearing in this manner to perfect a government appeal is singularly inappropriate. Again, Judge Cox's words from *U.S. v. Burris*, 21 M.J. at 145 have special relevance:

The paucity of the record worked to the detriment of the government, because the prosecution had the burden of persuasion. * * * The Government failed to establish a proper record, and it is not for appellate courts to launch a rescue mission.

of how a case should be processed when an accused is in pretrial confinement. It is also not an exemplar of how motions to dismiss for lack of speedy trial should be presented and responded to. As the trial judge noted, the evidence on which she had to base her decision was "meager." I am concerned, however, that the trial judge let a single event in the pretrial processing of the charges exert undue influence in her determination of whether the government exercised "reasonable diligence" under *U.S. v. Tibbs*, 15 USCMA 350, 35 CMR, 322 (1965), as reinstituted by *U.S. v. Kossman*, 38 M.J. 258 (CMA 1993), and did not correctly apply that test.

In the case at bar there is precious little competent evidence in the record to support the trial judge's ruling. The critical issues were presented almost entirely on the assertions of counsel, in their briefs and in argument on the motion to dismiss due to lack of speedy trial, under both RCM 707 and Article 10. The direct evidence, presented through the testimony of witnesses, was limited to the events occurring during the period from 10 December, when the accused was first suspected of having committed an offense, to 15 December, when he was placed in pretrial confinement.

Since RCM 707 specifically requires the submission of a chronology by trial counsel, it is apparently to be treated as "evidence" for the purpose of arriving at determinations under that rule. Whether this unsworn statement prepared by the trial counsel is entitled to similar status for the purpose of determining issues under Article 10 is less apparent. I reserve judgment on this issue for a more appropriate case. In any event, the trial judge stated: "In making that ruling, as I said yesterday, I have accepted the chronology from the government...." R. 7 (April 26 1994). As noted by the majority in

footnote 2, use of a stipulation of fact would eliminate this issue.

The trial judge's ruling appears based on inactivity or delays during the periods from 10 December 1993 to 10 January 1994, 11 January to 15 February, and 10 March to 8 April, 1994. Initially, whether the Government should be accountable for the period from 10 December to 13 December, when the accused was held by local civilian authorities for offenses within their jurisdiction, is open to question.[6]

Assuming that the period from 10 to 15 December was not a significant factor, what of the remaining period to 10 January? Although the judge found that the Government "allowed other days of delay" (Appellate Exhibit XII at page 5) during this period, she also stated that this period was "probably not unreasonable for a period of investigation." R. 3 (April 26, 1994). Clarification is needed to reconcile what appears to be an inconsistency between this statement and the conclusion of law that, overall, the Government did not pursue this case with due diligence. Cf. *U.S. v. Kosek*, 41 M.J. 60 (CMA 1994). In any event, under *Tibbs*, constant motion is not required, and delay, even periods of inactivity, is acceptable.

The trial judge found that during the period from 15 March to 8 April the Government had allowed "other days of delay"; however, she also noted that this period was "not totally unreasonable, although it does give me some doubts." R. 4 (April 26, 1994). The judge noted that there was no evidence as to the details of the activities during this period and no reason to believe that there was anything unusual or complicated about them. The judge found: "[T]here is no reason to believe that any part of this period was excludable under RCM 707 or otherwise unusual, so as to contribute to a conclusion

6. In her RCM 707 analysis, the trial judge found that the accused had been in a status of arrest when he was turned over to civilian authorities and that the three days before he was turned over to military control did not constitute a significant period of release under RCM 707(b)(3)(B). Since the military authorities had no control over when the accused would make bail or be released by civilian authorities, why should the Government be charged with this time

for either RCM 707 or Article 10 purposes? In any event, for Article 10 purposes, this three-day period would appear to come within the "brief periods of inactivity" criteria of *Tibbs*, even if the Government did nothing while awaiting developments in the civilian forum. Similarly, the three days while the accused was held for psychiatric examination, which might have been excludable under RCM 707, appears to fall squarely within the *Tibbs* "reasonable diligence" test.

that the Government was reasonably diligent in moving toward trial during that period." Appellate Exhibit XII at page 4.

If the trial judge believed that a period of time had to be excludable under RCM 707 in order to support a finding of due diligence on the part of the government, the judge was misapplying the law. Although RCM 707 is not completely inapposite to Article 10 motions and "[d]oes provide good guidance to both the Bench and the Bar" (*Kossman, supra* at 261 n. 3), her reference to RCM 707 in this context requires clarification. *Kosek, supra.* RCM 707 requires counting elapsed days from specified triggering events, excluding only approved pretrial delays. Brief periods of inactivity can be determinative of a RCM 707 violation but are expressly permitted under *Tibbs.* The trial judge made no findings as to what delay during this period was unreasonable, either between specific events or cumulatively.

As noted by the majority, the trial judge gave particular attention to the fact that the Article 32 Investigation report was transmitted to the convening authority by regular mail rather than overnight delivery service. The key to the trial judge's mental process is evidenced by the following statements made during the trial:

> I think that the nondiligent attitude of the government is really exemplified by that six-day transmittal of the 32 report, from the 9th of March, which is Wednesday, to the 15th of March, which is a Tuesday. Expeditious handling in that time would have allowed the 34 advice to be worked on, at least two days sooner. Expeditious handling would be indicated at that point with due regard for the fact that the accused was confined at the time.
>
> Now that two days I am talking in and of itself is not so significant, but it just shows you that the government had no regard for the fact that the man was confined. *In other words, that six-day transmittal is*

*evidence of a government attitude that I infer contributed to lots of other days of delay,* adding up to 109 days, even by the government's calculation.

R. 6–7 (April 26, 1994) (emphasis added). These thoughts are reiterated in the judge's ultimate findings:

> I find that the Government's failure to transmit the Article 32 Investigation report expeditiously, resulting in its arrival at the office of the Convening Authority at least two working days later than if transmitted expeditiously, constituted a lack of reasonable diligence, *and further is evidence of a non-dilligent, that is negligent, attitude on the part of the Government during this case. From this I infer that the Government's attitude allowed other days of delay,* not only during the period from 11 January to 15 February, but also during the periods 10 December to 10 January and 15 March to 8 April.

Appellate Exhibit XII at page 5 (emphasis added).

It is clear that, at least for a portion of the processing of the charges, the trial judge has transformed "reasonable diligence" into "expeditious". I do not agree with the majority's endorsement of this transformation in footnote 4. If this court desires to craft such a rule, it should do so prospectively. Simply put, *Tibbs* does not require "expeditious" handling and specifically permits "brief periods of inactivity." Moreover, the failure to use overnight delivery service, even after the accused has been in confinement for an extended period of time, does not establish "that the Government could readily have gone to trial much sooner than some arbitrarily selected time demarcation but negligently or spitefully chose not to . . . ." *Kossman, supra* at 261. If periods of pure inactivity are allowable, then certainly similar periods of time while documents are in transmittal should be allowable.[7]

7. I note there is no evidence in the record as to when the Article 32 report was actually mailed. Assuming, as the trial participants did, that it was mailed on 10 March, such action is arguably "expeditious" and, in my view, clearly "reasonable diligence." The trial judge's finding imputes to the Government an acknowledgment

that the U.S. Postal Service is incapable of delivering material mailed from Baltimore, MD, on a Wednesday, to New York, NY, by Friday, or at the latest, the following Monday. There is no evidence in the record that supports a finding that regular mail service is usually, or normally, that slow, and, since delivery was not in the

I am concerned about the transformation of the lack of "expeditious" handling of the charges by personnel in Baltimore into an "attitude"[8] imputed to other Government personnel processing the charges in other offices, including those who acted well before this "non-diligent, that is negligent" event. I disagree with the majority's view that the trial judge "saw that shortcoming as merely reflecting an attitude by the Government inconsistent with reasonable diligence, which permeated the entire process." Footnote 4. In the first instance, I do not find the failure to use overnight express delivery to be a "shortcoming." More importantly, I can find no logical connection between the failure to use overnight service on 10 March and the events occurring (or not occurring) between 15 March and 8 April, much less those between 10 December 1993 and 10 January 1994, and between 11 January and 15 February, and I can find no evidence in the record to support the finding that this attitude allowed days of delay.

It is indisputable that the Government has to keep its eye on the speedy trial clock from the moment an accused is placed in a status of arrest, is confined or placed in restraint, or charges are preferred. There is also no dispute that, as time passes, particularly when an accused is in confinement, greater attention to the processing of charges is expected. For RCM 707 purposes, where the 120-day clock is running down, a day or two delay attributable to the Government, including delay in the transmittal of documents, may be fatal. However, it is my understanding of the law that, under *Tibbs*, neither "expeditious" processing of charges nor any particular number of days is the test of whether the Government has used "reasonable diligence" in bringing the accused to trial. In regard to the former, *Tibbs* does not appear to distinguish between actions or brief periods of inactivity at any particular stage of the pretrial processing of charges. In regard to the latter, I note the trial

judge's statement: "I can't help but be influenced by the three months of the *Burton* rule. It was a standard the government strove to meet and did meet most of the time for many years." R. 7 (April 26, 1994). *Kossman, supra*, expressly overruled *U.S. v. Burton*, 21 USCMA 112, 44 CMR 166 (1965), and three months, or 90 days, is no longer the test under Article 10. Indeed, *Kossman* pointedly notes that there may well be a violation of Article 10, even though charges are brought to trial in less than 90 days.

I agree with the majority's positions on the standard of review and the burden of proof. However, the trial judge's expectation of "expeditious" handling of charges and her unsupported inference of an attitude that caused delays unfairly weighted the scale against the government. The influence of the expressly overruled *Burton* presumption appears to have further tipped the scales. Although the trial judge characterized intervals as reasonable, and did not find any specific action or inaction of the Government negligent, other than the two day delay caused by failure to use overnight delivery service to transmit the Article 32 report, she concluded that "overall" the Government did not proceed with reasonable diligence, leaving me perplexed as to exactly what the Government did wrong. I would set aside the ultimate ruling of the trial judge and return the record of trial for reconsideration, including opportunity for the parties to present additional evidence and argument. *Kosek, supra*, 41 M.J. at 66.

FEARNOW, Judge (dissenting):

I agree that the decision of the Court of Military Appeals in *United States v. Kossman*, 38 M.J. 258 (CMA 1993), has reinstituted the "reasonable diligence" standard of *United States v. Tibbs*, 15 USCMA 350, 35 CMR 322, for purposes of testing compliance with the Article 10 UCMJ speedy trial requirement. However, I believe that *Koss-*

---

Washington, D.C. area, I do not believe it qualifies for judicial notice. I cannot but wonder what the trial judge's finding, and my brothers' views, would be if there was evidence that the report was mailed on 10 March using "Express Mail", which the U.S. Postal Service asserts will result in overnight delivery, and the report was

still not received by the convening authority until 15 March.

8. I note that the portion of the judge's remarks concerning "attitude" is not quoted by the majority in footnote 4 of their opinion.

*man* also provides new guidance on the scope of criteria that should be considered in determining whether the "reasonable diligence" test has been satisfied and that these factors were not considered by the military judge in reaching her decision. Furthermore, the record here is so devoid of competent evidence that it cannot be said that the findings of the military judge are "fairly supported by the record" which is the test a reviewing court must apply. *United States v. Middleton,* 10 M.J. 123 (CMA 1981).

As pointed out by Judge Cox in *Kossman,* "[T]he logistical challenge of a world-wide system that is constantly expanding, contracting or moving can at times be daunting." Further "[e]ven ordinary judicial impediments, such as crowded dockets, unavailability of judges, and attorney caseloads, must be realistically balanced." *United States v. Kossman, supra* at 261. These circumstances are in addition to the operational requirements that are always a factor in scheduling a trial in the context of a military service. In the case at bar, the military judge could have taken judicial notice of the following facts that relate to this issue:

    a. The SCM convening authority and most of the witnesses were located in the Washington, D.C. area;

    b. The GCM convening authority, SJA and trial counsel were located on Governors Island, N.Y.;

    c. The defense counsel was stationed at the Navy Legal Services Office (NLSO) in Norfolk, Va.;

    d. The accused was confined first in Philadelphia, Pa., and later at Quantico, Va.;

    e. The Article 32 investigating officer was assigned to the Coast Guard Yard in Baltimore, Md., where the Article 32 investigation was conducted; and

    f. The trial itself was held in Washington, D.C.

These factors are not unusual for a Coast Guard court-martial. Nevertheless, they do reflect a trial system that at least from trial to trial is "constantly expanding, contracting, or moving." These circumstances also tend to make the "ordinary impediments" of crowded dockets and attorney caseloads even more vexing due to the need to schedule participants that are geographically separated and in many cases outside the line of command of the convening authority and SJA.

I do not advocate here that the logistical difficulties present in many trials should serve as a standing excuse for poor or inattentive case management. I believe, however, that *Kossman* and *Tibbs* not only allow for, but require, the recognition of these circumstances where they exist. They should have been considered in this case when addressing the question of whether the Government had acted with "reasonable diligence" in bringing the case to trial. As an example, information relevant to this issue would include: how much time elapsed between the SJA's requesting the assignment of a defense counsel and one actually being detailed; the time required to locate and assign a qualified and available Article 32 investigating officer; and how many other cases the SJA's office had on its docket during this period. This type of evidence, if available, may more accurately portray the steps being taken on this case during periods that the "meager" information presented at trial currently makes noteworthy only for the lack of any activity.

Here, just as Judge Gierke found to be the case in his dissent in *United States v. Nix,* 40 M.J. 6 (CMA 1994), what we find is "the defense made an offer of proof; the prosecution disputed the defense's offer of proof; and the military judge made purported findings of fact with no evidence in the record." 40 M.J. at 8. Under these circumstances, I believe further proceedings for the purpose of resolving this collateral issue are appropriate. Under similar circumstances in *United States v. Queen,* 26 M.J. 136 (CMA 1988), a *DuBay* hearing (*see United States v. DuBay,* 17 USCMA 147, 149 n. 2, 37 CMR 411, 413 n. 2 (1967)) was ordered to take further evidence relating to the defense motion to suppress a confession. In addressing the sufficiency of the evidence before it, the Court stated:

    We prefer, however, not to decide this case on inferences from the record, when re-

mand to the trial court for receipt of testimony ... offers a means to clarify the ambiguities in the record.

26 M.J. at 142. *See also United States v. Jeter,* 35 M.J. 442 (CMA1992); *United States v. Lucy,* 6 M.J. 265 (CMA1979); and *United States v. Taylor,* 3 M.J. 947 (NCMR1977).

In the recently decided case of *United States v. Kosek,* 41 M.J. 60 (CMA1994), the Court of Military Appeals granted review of a CMR decision rendered in response to a Government appeal under Article 62, UCMJ, 10 USC § 862. At trial, the military judge had granted the defense motion to suppress evidence. The Court of Military Review then reversed the decision of the military judge. The Court of Military Appeals then went beyond merely ordering a *DuBay* hearing for the taking of additional evidence. It instead set aside the decision of the Court of Military Review and the ruling of the military judge on the grounds that "the military judge's rulings were ambiguous or incomplete." 41 M.J. at 64. The appropriate remedy was determined to be a remand to the trial court for reconsideration with the additional guidance that the reconsideration "may include opportunity for the parties to present additional evidence and argument." 41 M.J. at 66.

I join with Judge Bridgman's view that the military judge's ruling in the case before us is inconsistent (ambiguous) in that it infers from the loss of two working days related to the transmission of the Article 32 report by regular mail, that three previous periods of from 3 to 4 weeks each, resulted from the Government's negligent attitude. AE XII at 5. The inference drawn is without any evidentiary basis and in my opinion is inconsistent with the predicate fact. The Article 32 investigation, including mailing of the report by regular mail, was completed in an expedient manner in that only 7 days elapsed from the start of the investigation to the convening authority receiving the report. It therefore does not support an inference of a "negligent attitude." The ruling is also incomplete in that it does not address the factors set forth in *Kossman* as discussed above.

Based on the foregoing, I would at a minimum order a *DuBay* hearing in this case for

the receipt of additional evidence. However, I believe the more efficient course to be that followed in *Kosek, supra,* and recommended by Judge Bridgman here: to set aside the ruling of the military judge and return the record of trial for further consideration including opportunity for the parties to present evidence and argument.

## APPENDIX

The judge found the following chronology of events:

10 December 1993

1420: DC3 Laminman escorted by Coast Guard Intelligence (CGI) to interview with Bolling AFB Security Police.

later: DC3 Laminman being interviewed at CGI's Washington Field Office, after normal working hours.

2230: DC3 Laminman escorted by CGI to interview with Prince Georges County Fire Department.

11 December 1993 early AM: DC3 Laminman arrested by Prince Georges County, charged and held on $10,000 bail.

13 December 1993 Prince Georges County released DC3 Laminman. CGI transported DC3 Laminman to National Naval Medical Center (NNMC), Bethesda, MD, for psychiatric evaluation.

15 December 1993 DC3 Laminman released from NNMC and placed in pretrial confinement.

10 January 1994 Charges preferred against DC3 Laminman.

11 January 1994 Summary Court–Martial Convening Authority received Charges.

21 January 1994 LT Grunawalt detailed as Defense Counsel (DC).

3 February 1994 CDR Vallone appointed as Investigating Officer (IO) to conduct Article 32 Investigation on 15 February.

8 February 1994 Article 32 Investigation re-scheduled for 8 March because DC unavailable on 15 February.

15 February 1994 Written defense request, dated 9 February, for delay of Article 32 Investigation from 15 February to 1 March reaches Convening Authority.

17 February 1994 Convening Authority approves delay from 15 February to 8 March, stating that whole period is excludable under R.C.M. 707.

8 March 1994 Article 32 Investigation held.

9 March 1994 IO completes his report.

15 March 1994 Convening Authority receives IO's report.

22 March 1994 Article 34 advice to Convening Authority.

7 April 1994 DC submits written demand for speedy trial

8 April 1994 Charges referred to General Court–Martial.

11 April 1994 Docket request submitted and R.C.M. 802 conference held; Government requests trial on 25 April 1994. Trial is scheduled accordingly. Motion deadline established as close of business on 18 April 1994, which is one day less than that established by the Rules of Court (Coast Guard Military Justice Manual, Enclosure 18, Rule 9).

18 April 1994 Defense serves two suppression motions on Government.

21 April 1994 Defense serves Motion to Dismiss on Government.

25 April 1994 Trial began.