UNITED STATES, Appellee,

v.

Donell B. NORFLEET, Staff Sergeant,
U.S. Marine Corps, Appellant.

No. 66,696.

NMCM 90 0386.

U.S. Court of Military Appeals.

Argued Jan. 8, 1992.

Decided Sept. 28, 1992.

For Appellant: *Lieutenant Randall L. Chambers, JAGC, USNR* (argued).

For Appellee: *Lieutenant Elizabeth C. Moores, JAGC, USNR* (argued); *Colonel T.G. Hess, USMC* (on brief); *Commander Thomas W. Osborne, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

Appellant was convicted, *inter alia,* of two specifications of committing indecent acts upon his daughters, both under age 16

at the time of the offenses.[1] The issue before us is whether the military judge erred in receiving evidence of appellant's confession to Naval Investigative Service (NIS) agents.[2] We hold that the judge did not err, so we affirm.

## I

The allegations against appellant first arose in October 1988, when the girls mentioned the abuse to their mother (appellant's wife) and to a high school counselor. The counselor promptly summoned appellant and his wife to school for a talk. According to appellant, the counselor did not specify what allegations had been made but said only that a problem existed.[3] Ultimately, she told the couple that she could not adequately "deal with" the matter and advised them to "get some support from Family Services." The counselor did not testify at appellant's court-martial, and appellant apparently made no incriminating statements to her.

Appellant took the school counselor's advice and made an appointment with the Family Service Center (FSC), Camp Pendleton, California. On October 19, 1988, he appeared and was introduced to Ms. Snyder, a civilian contract counselor with FSC's Family Advocacy Program. Ms. Snyder did not testify at appellant's court-martial, and no admissions made to her by appellant were offered at trial. Presumably, Ms. Snyder did not advise appellant of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, or *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Because Ms. Snyder knew nothing about the case when appellant arrived, she obtained some preliminary information from him. Then, according to appellant, she called the school counselor and learned of the allegations of sexual abuse. Then she confronted appellant with the allegations. Initially, appellant denied any wrongdoing. Eventually, however, after much discussion and upon Ms. Snyder's advice that the best thing for him to do was to admit his wrongdoing and begin family counseling, he apparently admitted his guilt to her. Appellant conceded on the witness stand that Ms. Snyder made no promises of nonprosecution. She forthrightly informed him that his command would be notified, and she elaborated on the possible consequences and options available to the command. After the interview, Ms. Snyder indeed reported the misconduct to appellant's command. Appellant was never placed in pretrial confinement.

Twelve days after the Snyder interview, on October 31, appellant was interrogated by NIS Special Agents Janet Moller and Melanie Sue. Appellant was duly advised of the standard Article 31 rights, which he waived; he agreed to talk with the investigators. At the time of the interrogation, the agents were in possession of statements by the victims. They had also talked to Ms. Snyder over the telephone and knew the results of her interview with appellant. The agents gave no special "cleansing warnings" regarding appellant's admissions to Ms. Snyder.

At about 11:00 a.m., three hours into the NIS interrogation, appellant confessed to

---

1. Appellant was tried by a general court-martial composed of officer and enlisted members at Camp Pendleton, California. Contrary to his pleas, he was convicted of absence without leave (1 day), disobeying a lawful order, and two specifications of committing indecent acts, in violation of Articles 86, 90, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 890, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 36 months, partial forfeitures, and reduction to E–1. The convening authority approved the sentence.

2. We granted review of the following issue:
   WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN AFFIRMING THE MILITARY JUDGE'S DENIAL OF THE DEFENSE MOTION TO SUPPRESS APPELLANT'S 31 OCTOBER 1988 STATEMENT TO NAVAL INVESTIGATIVE SERVICE AGENTS ON THE GROUNDS THAT THE STATEMENT WAS INVOLUNTARY.

3. A pretrial statement by Mrs. Norfleet belies appellant's claim of blissful ignorance.

sexually abusing his daughters.[4] His oral statements were reduced to writing. He made a few corrections; then he signed the document under oath.

At trial, appellant moved to suppress the confession on the ground that it was coerced. After making extensive factual findings, the military judge concluded that appellant's confession was voluntary, and he denied the motion to suppress. The Court of Military Review agreed in a brief, unpublished opinion dated March 21, 1991.

Before this Court, appellant reiterates his claim that his confession to the NIS agents was involuntary. He cites his below average scores on various intelligence, aptitude, and reading tests, as well as his alleged belief that his family would only get counseling if he confessed. Further, he asserts that his statement to the agents was beclouded by his meeting 12 days earlier with Ms. Snyder, wherein he says she called him a "liar," "threatened" him "regarding the criminal consequences of child abuse," and urged him to "just go along with what's going on and get some support." Final Brief at 4–5.

## II

The receipt in evidence of an involuntary confession violates due process of law. *Colorado v. Connelly*, 479 U.S. 157, 163, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). *See also* Mil.R.Evid. 304(a), Manual for Courts-Martial, United States, 1984. Confessions can be involuntary as a result of official coercion or overreaching, or by the failure of officials to secure necessary waivers of rights. 479 U.S. at 163–70, 107 S.Ct. at 519–24.

■ In the instant case, the military judge meticulously evaluated the factors contributing to appellant's decision to confess. With regard to appellant's alleged inability to comprehend, the judge considered appellant's position as a staff sergeant, USMC, with 14 years of service. Further, he could hardly fail to note appellant's testimonial abilities, as revealed through over 30 pages of his testimony on the motion. In *Connelly*, absent police coercion, even an accused's mental illness was held insufficient to render his confessions involuntary. This appellant's arguably lower-than-average intelligence does not insulate him, as a matter of law, from interrogation. *See Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969).

■ Furthermore, the judge was not obligated to accept appellant's claims that the NIS agents promised him that his family would receive counseling *if and only if he confessed* and that he would be spared prosecution by confessing—claims *adamantly* refuted by the agents. As to physical coercion, there was none.

The final aspect is the effect of appellant's admissions to Ms. Snyder. It is not a question of whether Ms. Snyder, as a contract government employee, was required to secure certain rights-waivers as a predicate to admission at trial of any incriminating statement made by appellant to her. *See* Art. 31; *United States v. Moreno*, 36 MJ 107 (CMA 1992), and *United States v. Miller*, 36 MJ 124, 126 (CMA 1992). Whatever appellant said to Ms. Snyder—even the fact that he said anything to Ms. Snyder—was not presented to the factfinder.[5]

■ Thus the question is whether appellant's statements to Ms. Snyder in some way "tainted" his later statements to NIS We do not presume taint. *United States v. Steward*, 31 MJ 259, 264 (CMA 1990). In

4. During the interrogation, several breaks were taken. Appellant was offered refreshments and creature comforts, and he used the telephone. He never asked to terminate the interrogation or asked for a lawyer.

5. Note that, under somewhat similar circumstances, we have held that an accused's incriminating statement to a psychiatric nurse, whom the accused sought out for help, was not rendered inadmissible by the nurse's failure to advise him of his rights under Article 31, UCMJ, 10 USC § 831. *See United States v. Moore*, 32 MJ 56 (CMA 1991).

deciding whether the subsequent statements were tainted, the military judge could consider, among other things: the 12–day interval between that conversation and his NIS interrogation; the fact that appellant was not placed in confinement after the Snyder interview and was free to discuss his rights and options with anybody, including counsel; appellant's age and experience in the Corps; the evidence that the agents did not exploit appellant's prior admissions to Ms. Snyder during their interrogation;[6] and the full and knowing rights-advisement and waivers accomplished at the inception of the NIS interrogation. *See Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

On this record, the military judge was well within his discretion in ruling appellant's statements voluntary.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.

---

**6.** The lead NIS agent so testified, and appellant did not assert otherwise.