UNITED STATES, Appellee

v.

James S. MARQUARDT, Staff Sergeant
U.S. Air Force, Appellant.

No. 93–0140.
CMR No. 28781.

U.S. Court of Military Appeals.

Argued Jan. 4, 1994.
Decided May 31, 1994.

For Appellant: *Colonel Jay L. Cohen* (argued); *Colonel Terry J. Woodhouse* and *Lieutenant Colonel G. Michael Lennon,* USAFR.

For Appellee: *Captain Timothy G. Buxton* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Thomas E. Schlegel* (on brief).

*Opinion of the Court*

CRAWFORD, Judge.

Based on mixed pleas, appellant was convicted of two specifications of wrongful appropriation of currency and five bad-check specifications, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. The convening authority approved the sentence of a bad-conduct discharge, confinement for 9 months and reduction to E–3. The Court of Military Review affirmed the findings and sentence in an unpublished opinion. We granted review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN FAILING TO SUPPRESS APPELLANT'S CONFESSION TO AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS (OSI) BECAUSE IT WAS TAINTED BY EARLIER ADMISSIONS OBTAINED IN VIOLATION OF ARTICLE 31, UCMJ.

FACTS

The OSI interrogation took place on December 20, 1989. Prior to that appellant had been counseled separately, without warnings, by his supervisor, Captain Swank, and by Master Sergeant (MSgt) Moore. Captain Swank met with appellant first in September 1989, and then again in early November 1989, to discuss appellant's financial and bad-check problems. Captain Swank did not talk to appellant about the cash shortages at the

officers' club which were the subject of the OSI interrogation and formed the basis for the wrongful-appropriation findings.

MSgt Moore also counseled appellant concerning a check returned from the base exchange. Moore did not at any time discuss any other checks or the cash shortages from the officers' club. MSgt Moore did receive a phone call from Mrs. Martin, one of appellant's employees, about a loan and asked appellant to contact her concerning that matter. During one or more of these conversations, MSgt Moore did advise appellant to pay his loans as soon as possible.

On December 20 the OSI interrogator advised appellant of his rights. Appellant acknowledged his rights and waived them. In response to the agent's question, appellant indicated that some of the checks were returned because of a banking error. To verify his explanation the agent asked appellant for a consent to review his bank records. He again was warned of his rights and waived his rights and consented to a search of these records. At no time did the OSI agent inform appellant that she was aware of the statements made by appellant to Captain Swank and MSgt Moore.

The judge found that there was an independent source for appellant's statement to the OSI since the statements to Captain Swank and MSgt Moore were minor in nature and occurred one and one-half months before the OSI interview. Additionally, appellant had been twice advised of his rights by the OSI agent.

## DISCUSSION

*Assuming* the statements by Captain Swank and MSgt Moore were obtained in violation of Article 31(b) *, UCMJ, 10 USC § 831(b), we hold that they did not taint the subsequent statement made to the OSI agent.

▆ Both the Code and the Manual provide that an improperly obtained statement or improperly obtained derivative evidence

will be suppressed for use on the merits when a proper motion has been made. Article 31(d) provides: "No statement obtained from any person in violation of this article ... may be received in evidence against him in a trial by court-martial." Mil.R.Evid. 304(a), Manual for Courts–Martial, United States, 1984, provides that "an involuntary statement or any derivative evidence therefrom may not be received in evidence against an accused who made the statement if the accused makes a timely motion to suppress...." The exclusionary rule would not apply if there is an "independent source" for the evidence, *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988); the connection with the inadmissible evidence has been "so attenuated as to dissipate the taint," *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939); or the evidence would have been inevitably discovered, *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). *See also United States v. Kline,* 35 MJ 329 (CMA 1992); *United States v. Williams,* 35 MJ 323 (CMA 1992).

The most significant Supreme Court case in this area is *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The issue in *Elstad* was similiar to the issue in this case, that is: Whether the initial failure of law enforcement officers to administer the necessary warnings taints a subsequent statement made after a suspect has been fully advised of his rights. *Id.* at 300, 105 S.Ct. at 1288.

Police officers, suspecting Elstad was involved in a burglary, went to his house. They were met at the front door by his mother, who led the officers to her son's bedroom where he was laying on the bed. One of the officers sat down with the suspect and asked him if he knew why they were there. Elstad said no. The officer then asked if he was involved with a particular burglary. The suspect stated, "Yes, I was there." Thereafter the officers escorted El-

---

* It is not necessary for us to decide whether these statements were obtained in violation of Article 31(b) in order to answer the granted issue.

stad to the police station. At the police station Elstad was advised "for the first time" of his *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights. After this rights' advisement, Elstad waived his rights and gave a full statement to the police. 470 U.S. at 300–01, 105 S.Ct. at 1288–89.

The Supreme Court, in addressing statements following tainted interrogations, stated in *Elstad:*

> We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

470 U.S. at 314, 105 S.Ct. at 1296.

In addition to looking to subsequent warnings to determine whether there has been a purging of the taint, the Supreme Court had previously indicated that it would look to a number of other factors as well. Some of these are lapse of time, state of mind of the defendant, and aggravating circumstances. *See, e.g., Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

This Court considered a similar issue in *United States v. Norfleet*, 36 MJ 129 (CMA 1992). The Court held that, even assuming the accused's prior unwarned statements to a social worker were inadmissible, the second warned statement to law enforcement investigators was admissible. In determining admissibility of the second statement, we considered several factors: a 12–day intervening period between the interviews; the facts that the accused was not in custody and was free to speak to anyone, including counsel; and that the interrogator "did not exploit appellant's prior admissions." *Id.* at 132.

■ All of these factors support the conclusion that the taint, if any, from the prior unwarned counseling sessions dissipated in appellant's case. More than one month had elapsed between the allegedly illegally obtained statements and appellant's statement to the OSI. "We do not presume taint," *United States v. Norfleet*, 36 MJ at 131, from those statements. Additionally, appellant was not told that the OSI knew of the prior statements to the captain and the first sergeant and appellant did not observe a prior statement. Third, there is no evidence of record of aggravating circumstances such as an intentional disregarding of constitutional or codal rights. Lastly, appellant was warned by the OSI and waived his rights. Thus, we hold appellant's confession was not tainted by his prior unwarned statements.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.