**UNITED STATES**

v.

**Sergeant Robert A. VANDEWOESTYNE, FR084–54–9038 United States Air Force.**

**ACM S28771.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 4 Jan. 1993.

Decided 4 Nov. 1994.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, Lieutenant Colonel G. Michael Lennon, Major George F. May, and Captain Robert I. Smith.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Major Jules D. Silberberg, and Major Kingston E. Smith.

Before DIXON, YOUNG, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Judge:

Pursuant to a pretrial agreement, appellant pled guilty to knowingly using a false writing in support of a claim against the United States and making a false claim against the United States (Article 132, UCMJ, 10 U.S.C. § 932 (1988)), conditioned upon the preservation of his motion to suppress his confession. The military judge sentenced appellant to a bad-conduct discharge, confinement for 4 months, and reduction to E–1. Appellant asserts that the military

judge erred at trial: (1) in finding appellant waived his right to counsel before confessing; and (2) in ruling appellant's statements were made voluntarily. We disagree and affirm.

## I. Standard of Review

At trial, and now on appeal, appellant contends he confessed only after the AFOSI agents refused to honor his request for counsel and threatened to have his wife deported for her part in the scheme to defraud the government. Appellant's claims amount to allegations of coercive police activity. Therefore, we must apply a de novo, plenary review. *Arizona v. Fulminante,* 499 U.S. 279, 285–87, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302, 315 (1991); *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). We may adopt the military judge's essential findings of fact, but are not bound to do so. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988); *United States v. Cole,* 31 M.J. 270, 272 (C.M.A.1990). Nonetheless, we are generally inclined to give them great deference. *See Cole,* 31 M.J. at 272. Once the facts are established, we must examine the totality of the circumstances to determine whether the prosecution established by a preponderance of the evidence that the confession was voluntary. *Fulminante,* 499 U.S. at 284–85, 111 S.Ct. at 1251; MIL.R.EVID. 304(e)(1).

## II. Facts

Appellant and his wife were evacuated from the Philippine Islands after the eruption of Mt. Pinatubo. After his return to the United States, he filed a claim at Lowry Air Force Base, Colorado, for property left in the Philippine Islands. Although he was suspected of falsifying some of the items claimed, of particular interest was furniture appellant claimed to have purchased for $4,300, for which he submitted a receipt. The receipt was annotated on the back to show the bill had been paid in full. Special Agents Santelli and Griffith, of the Air Force Office of Special Investigations (AFOSI), interviewed appellant about the accuracy of his claim. After proper advisement of rights, appellant asked the AFOSI agents if they thought he needed a lawyer. The agents told appellant they could not advise him and

he would have to make the decision himself. Special Agent Santelli re-advised appellant of his rights to an attorney and to remain silent. Appellant said he did not need an attorney and agreed to speak to the agents.

Appellant initially denied any wrongdoing and insisted that his claim was valid. The AFOSI agents told appellant they knew he was not telling the truth because one of them had examined his house in the Philippine Islands and had shown the receipt to the owner of the furniture store. The AFOSI agents also showed appellant photographs of his house which had not been damaged by the eruption of the volcano. They told appellant they believed that the "paid in full" annotation on the receipt was written by his wife. The agents said they knew appellant's wife was a resident alien and, if she contributed to this criminal fraud, she could be deported back to the Philippine Islands. One of the agents suggested that the Immigration and Naturalization Service (INS) would be the appropriate agency to investigate and decide what to do about appellant's wife. Shortly thereafter, appellant confessed to making a false claim and submitting a false writing in support of that claim.

For the next few hours, the agents went over the claim with appellant, line-by-line. Appellant admitted that his wife endorsed the receipt and that he had falsified his claim by listing several items he never owned and others he owned but were not of the quality or expense claimed. Appellant agreed to put his confession in writing, but asked Agent Santelli to type it because of appellant's poor penmanship. Appellant dictated his confession and Agent Santelli typed it on an Air Force Form 1168, Statement of Subject/Witness/Complainant. Appellant was given the form and advised to read over and initial the rights advisement, review the statement, and if necessary, make corrections to it. While the agents were out of the room, appellant read over the rights advisement and initialed his rights. Instead of selecting one of the choices as directed by the form, appellant initialed, each of the following in Section III, ¶ 2, of the form (*see* Appendix):

   a. I do not want a lawyer. I am willing to answer questions or make a state-

**590**

ment or both, about the offenses under investigation.

b. I do not want a lawyer and I do not wish to make a statement or answer any questions.

c. I want a lawyer. I will not make any statement or answer any questions until I talk to a lawyer.

Amazingly, when the AFOSI agents returned, neither noticed appellant had selected all of the mutually exclusive options. Appellant thereafter swore to the accuracy of the statement and signed it.

## III. Discussion

■ The evidence establishes by a preponderance of the evidence, under the totality of the circumstances, that appellant made a knowing and intelligent waiver of his right to counsel and his right to remain silent at the initiation of the interview. His mention of legal counsel was not sufficiently clear "that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States,* —— U.S. ——, ——, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994); *see United States v. McLaren,* 38 M.J. 112 (C.M.A. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994). The AFOSI agents properly clarified the request, and appellant waived his right to counsel.

■ A statement is involuntary, and inadmissible for most purposes, if it is obtained through the use of coercion, unlawful influence, or unlawful inducement. Article 31(d), UCMJ, 10 U.S.C. § 831(d) (1988); Mil. R.Evid. 304(a) and (c)(3). To admit an involuntary statement violates due process of law. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Norfleet,* 36 M.J. 129 (C.M.A.1992). A voluntary confession is one which is the product of an essentially free and unconstrained choice by its maker. *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). But, "[t]he Supreme Court has consistently made clear that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and

bring about confessions not freely self-determined.'" *United States v. Ferrara,* 377 F.2d 16, 17 (2d Cir.1967) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961); *accord United States v. Murphy,* 18 M.J. 220, 225 (C.M.A.1984). Whether it is voluntary depends on the totality of the circumstances. *Arizona v. Fulminante,* 499 U.S. at 284–85, 111 S.Ct. at 1251. In applying the totality of the circumstances test to determine if appellant's will has been overborne, we must consider "three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Green v. Scully,* 850 F.2d 894, 901–02 (2d Cir.1988); *see Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962).

■ In this case, we find:

(1) Appellant was a 32–year–old noncommissioned officer with over eight years of military service. English is his native language, he expresses himself well, and he had approximately 60 credits towards a college degree at the time of trial.

(2) AFOSI agents went to appellant's residence on Lowry Air Force Base at 0930, told him they wanted to talk to him, and asked if he would accompany them to their office. Appellant agreed, re-entered his residence to brush his teeth and notify his wife, and then accompanied the agents to the AFOSI office. Two agents and appellant sat in an interrogation room which contained a table and chairs. Both agents and appellant were seated. Appellant was not handcuffed or formally placed under apprehension. Appellant was advised of and waived his rights to remain silent and to have counsel. Although the interview lasted most of the day, appellant's initial admission came shortly after the interview began. Appellant never asserted either his right to counsel or his right to remain silent. The agents provided appellant with food at lunch time. After lunch, appellant agreed to make a written statement, but opined that his handwriting was not very legible. He agreed to dictate his statement to Special Agent Santelli to type. After the statement was typed, appellant was left alone to go over it and make any

corrections he thought necessary. After reviewing the statement, and completing the advisement of rights section, appellant swore to the accuracy of its contents and signed it without any apparent hesitation or reluctance.

(3) There is no evidence that the agents yelled at appellant or threatened him with physical abuse. After appellant insisted that his claim was accurate and valid, the agents showed him pictures of his house in the Philippines to show him that there was no damage to the contents, the furniture he was claiming was not located in the house, and there was no room for it. One of the agents speculated that appellant's wife had falsified the endorsement "paid in full" on the receipt. The agent said he knew she was a resident alien and that if she were involved in defrauding the United States, she could be deported. Almost immediately thereafter, appellant admitted the claim was fraudulent.

We have little doubt that appellant was ultimately persuaded to confess because of his fear that a failure to cooperate with law enforcement officials might lead to the deportation of his wife if her complicity in the offenses was ever made known to the INS. But, the evidence does not support a conclusion that appellant's free will was overborne or in any way illegally impaired. *See Murphy*, 18 M.J. at 226. The AFOSI agents made no threat to refer the case to the INS and no promise that if he cooperated they would not refer the case. The AFOSI agents did little more than express what appellant must have known to be true: if his alien resident wife became involved in criminal activity she could be subject to deportation. "Obviously anyone who knows his rights and determines to confess does so for a reason. That the defendant's reason was to protect his [wife] does not in our judgment render his confession involuntary or necessitate a finding that he was coerced or that his free will was overborne." *United States v. Charlton*, 565 F.2d 86, 89 (6th Cir.1977) (police told appellant they had his son in custody and asked him what he was going to do about it); *see Allen v. McCotter*, 804 F.2d 1362 (5th Cir.1986) (officer's threat to file charges against robbery defendant's wife did not render his confession involuntary when officer had probable cause to arrest wife for aiding in commission of the robbery). Appellant's decision to cooperate "was a result of the intelligent exercise of his own free will." *United States v. Oakley*, 33 M.J. 27, 32 (C.M.A.1991) (military investigator's recommendation to accused to cooperate with local police not overbear his free will). We hold the prosecution established by a preponderance of the evidence that appellant's confession was voluntary.

■ The sole remaining issue is the admissibility of appellant's written statement. While the AFOSI agents were obviously inattentive to appellant's ambiguous completion of the rights advisement, we do not believe suppression of the written statement was necessary. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Davis*, —— U.S. at ——, 114 S.Ct. at 2355. Even if we were to find appellant unequivocally invoked his right to counsel, it would not make his oral statement inadmissible because it was given before the invocation of rights. The written statement would be no more than cumulative evidence of what appellant previously had admitted orally to the AFOSI agents. In that case, the admission of evidence that appellant swore to and signed the document would be harmless beyond a reasonable doubt. *See Fulminante*, 499 U.S. at 294–96, 111 S.Ct. at 1257.

### IV. Conclusion

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.

Chief Judge DIXON and Judge BECKER concur.