**UNITED STATES, Appellee,**

v.

**Specialist James O. POWNALL, 233–06–7511, United States Army, Appellant.**

**ARMY 9301638.**

U.S. Army Court of Criminal Appeals.

31 May 1995.

For Appellant: Captain Don F. Pollack, JAGC (argued); Captain Blair M. Jacobs, JAGC (on brief); Major Roy H. Hewitt, JAGC.

For Appellee: Captain Jinny Chun, JAGC (argued); Colonel John M. Smith, JAGC, Major Lyle D. Jentzer, JAGC, Captain John W. O'Brien, JAGC (on brief).

Before CAIRNS, GONZALES, and RUSSELL, Appellate Military Judges.

OPINION OF THE COURT

CAIRNS, Senior Judge:

A military judge sitting as a general court-martial found the appellant guilty, contrary to his pleas, of making a false official statement, making and using a false writing in connection with a claim against the United States, and wrongful cohabitation in violation of Articles 107, 132, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 932, and 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a bad-conduct discharge, confinement for six months, forfeiture of $500.00 pay per month for six months, and reduction to Private E1.

Appellant asserts, inter alia, that Military Judge Pangburn erred by failing to suppress two of appellant's pretrial statements which he argues were obtained in violation of Article 31, UCMJ. We disagree.

*Facts*

In July 1992, the appellant reported late for work and explained to his noncommissioned officer-in-charge (NCOIC) that he had been with his wife who was in the hospital. Upon contacting the hospital, apparently to verify the appellant's story, and learning that no "Mrs. Pownall" had been admitted, the NCOIC reported the situation to First Sergeant (1SG) Edmonds. First Sergeant Edmonds inquired into the matter, and the appellant again explained that his wife had been hospitalized. When 1SG Edmonds told appellant the hospital had no record of his wife's admittance, appellant replied that his wife was using the name Angela "Lewis," her last name from her previous marriage, along with her identification (ID) card from that marriage. First Sergeant Edmonds told appellant to get his wife a proper ID card, have her properly enrolled in DEERS (the computer data base of family members who are authorized medical care), and that he wanted the old ID card. When appellant subsequently failed to bring in the ID card, the first sergeant asked appellant if he was mar-

ried. The appellant said "yes."[1] First Sergeant Edmonds then told appellant he wanted to see appellant's marriage license. Appellant later gave the first sergeant a photocopy of a marriage license that was altered to reflect that he had married Angela Lewis in Dillon County, South Carolina, in May 1992. That ended the matter until Angela Lewis called the first sergeant's replacement some eight months later complaining that appellant had possession of her property, and alleging that appellant committed fraud in obtaining basic allowance for quarters (BAQ).

On 30 March 1993, the appellant's acting first sergeant (who was unaware of 1SG Edmond's inquiry into appellant's marital status) reported to Criminal Investigation Command (CID) that the appellant's "girlfriend," Angela Lewis, had alleged that the appellant had used her marriage license to obtain BAQ. At the beginning of the investigation, Angela told CID that she was primarily interested in obtaining her property from a trailer she had recently shared with appellant. Although Angela claimed she was not married to appellant, investigators learned that she was listed as appellant's spouse in the DEERS system and as appellant's spouse-beneficiary on his Servicemen's Group Life Insurance. Based on this information, Special Agent (SA) Welch concluded that appellant and Angela were engaged in a "domestic or civil" dispute. Special Agent Welch testified that when he first interviewed the appellant on 1 April 1993, he did not suspect appellant of any offense and therefore did not give appellant Article 31, UCMJ, warnings. During the interview appellant rendered a completely exculpatory statement in which he falsely stated that he and Angela were married. He provided SA

Welch with a photocopy of the altered Dillon County marriage license and agreed to provide SA Welch with the original marriage license.[2]

After interviewing the appellant, SA Welch briefed the appellant's acting first sergeant who related that Angela's former husband, Staff Sergeant (SSG) Matthew Lewis, was a soldier assigned at the installation. During an interview of SSG Lewis, CID learned that two of SSG Lewis' friends had signed his marriage license as witnesses. Special Agent Welch noted that these same two persons had also signed as witnesses on the photocopy of the marriage license submitted by the appellant. Staff Sergeant Lewis further described a peculiar mistake in the typing on his marriage license which was identical to a peculiarity on appellant's photocopy. When SA Welch contacted Dillon County, South Carolina, the custodian of marriage licenses informed SA Welch that no license was on file that reflected the appellant had ever been married in Dillon County. The custodian did confirm, however, that Angela was licensed and registered as having married Matthew Lewis in 1986.

Armed with the information gathered from SSG Lewis and Dillon County, SA Welch conducted a follow-up interview of appellant on 21 April 1993. Special Agent Welch told the appellant that, "When you was in here the first time, I told you I thought this was a husband and wife dispute. I have evidence now which makes me believe you're a suspect of these crimes." Special Agent Welch then fully and properly advised the appellant of his rights under Article 31, UCMJ, and *Tempia.*[3] Special Agent Welch did not, however, give appellant a "cleansing warning."[4] After

---

1. This statement subsequently formed the basis for Charge IV and its Specification, alleging false official statement. It was also relevant to the charge of wrongful cohabitation (Charge I, Specification 1).

2. The photocopy given to SA Welch was not admitted into evidence because the military judge ruled it was the product of an unwarned statement made by the appellant on 1 April 1993.

3. *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249, 1967 WL 4235 (1967), held that the principles enunciated in *Miranda v. Arizona,* 384

U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are applicable to military interrogations of criminal suspects.

4. A "cleansing warning" is advice given by an investigator to a suspect that the contents of previous unwarned statements may not be used against him. *See, e.g., United States v. Phillips,* 32 M.J. 76, 78 (C.M.A.1991); *United States v. Martindale,* 30 M.J. 172, 178 (C.M.A.1990); *United States v. Spaulding,* 29 M.J. 156, 158 (C.M.A. 1989).

appellant waived his rights, SA Welch began to tell appellant what he had learned since their first meeting. When appellant persisted in his falsehoods as related in the earlier interview, SA Welch confronted him with the evidence that Dillon County had no record of his marriage. Special Agent Welch concluded by asking, "Was our first meeting on the up and up?" After admitting that it had not been, the appellant confessed to altering the marriage license, wrongful cohabitation, and BAQ fraud.

At trial, appellant moved to suppress his statement to 1SG Edmonds on the grounds that the first sergeant should have warned him of his Article 31, UCMJ, rights. The military judge denied the motion, finding that the first sergeant's motive in questioning appellant was to assist the soldier and his wife, and that the first sergeant was not seeking incriminating responses or attempting to investigate any criminal activity. Appellant also interposed a timely motion to suppress his 1 April 1993 statement to CID because it was unwarned, and his 21 April 1993 confession because it was tainted by the earlier violation of Article 31, UCMJ. The military judge suppressed the first statement, but admitted the second because he found it was not a product of the first.

*Law*

■ Article 31(b), UCMJ, and Military Rule of Evidence 305(c) [hereinafter Mil. R.Evid.] provide that a person subject to the UCMJ must give warnings under Article 31, UCMJ, before interrogating or requesting any statement from an accused or a person suspected of an offense. In determining who is a suspect, an objective test is applied. The question is whether a reasonable person should consider the individual being questioned to be a suspect under the totality of the circumstances. *United States v. Meeks*, 41 M.J. 150 (C.M.A.1994) (citing *United States v. Leiffer*, 13 M.J. 337, 343 (C.M.A. 1982)).

■ Not all questioning of suspects must be preceded by warnings.[5] However, when suspects are questioned during an official law-enforcement investigation or disciplinary inquiry, Article 31, UCMJ, warnings are required. The purpose and nature of the questioning—and, hence, the motivation of the person asking the questions—are pertinent in analyzing when warnings are required. *United States v. Shepard*, 38 M.J. 408 (C.M.A.1993); *United States v. Loukas*, 29 M.J. 385 (C.M.A.1990).

■ Generally, an involuntary statement, or any statement derived therefrom, may not be admitted against an accused who made the statement if the accused makes a timely suppression motion or objection to the evidence. A statement is involuntary if it is obtained in violation of the warning requirements of Article 31, UCMJ, *Tempia*[6] and *Miranda*[7] or through the use of actual coercion, unlawful influence, or unlawful inducement. UCMJ art. 31; Mil.R.Evid. 304; *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Norfleet*, 36 M.J. 129 (C.M.A.1992).

■ A statement that is challenged as derivative evidence under Mil.R.Evid. 304 may be admitted if the military judge finds by a preponderance of the evidence that the statement was made voluntarily, that the evidence was not obtained by the use of the earlier statement, or that the evidence would have been obtained even if the statement had not been made. Mil.R.Evid. 304(e)(3). When an earlier confession is involuntary only because of noncompliance with warning requirements, the voluntariness of a second, derivative confession is determined by the totality of the circumstances. The earlier unwarned statement is a factor to be considered, but it does not presumptively taint the subsequent confession. *United States v. Phillips*, 32 M.J. 76, 79 (C.M.A.1991) (citing *Oregon v. Elstad*, 470 U.S. 298, 309–14, 105

---

5. For example, warnings are not required when questioning is done by a friend who is not acting in an official capacity, and such questioning is perceived by the person questioned to be no more than a casual conversation. *United States v. Duga*, 10 M.J. 206 (C.M.A.1981). *See also*

*United States v. Dandaneau*, 5 U.S.C.M.A. 462, 18 C.M.R. 86, 1955 WL 3288 (1955).

6. *See supra* note 3.

7. *See supra* note 3.

S.Ct. 1285, 1293–96, 84 L.Ed.2d 222 (1985)). Absent "deliberately coercive or improper tactics," administering subsequent warnings should ordinarily suffice to remove the conditions that precluded the admission of the earlier unwarned admissions. *Elstad* at 314, 105 S.Ct. at 1296.

### Discussion

#### A. Statement to 1SG Edmonds

 The first issue is whether appellant's statement to 1SG Edmonds should have been excluded because 1SG Edmonds failed to warn appellant under Article 31(b), UCMJ. The issue turns on two questions: (1) whether 1SG Edmonds suspected—or under the totality of the circumstances, reasonably should have suspected—the appellant of a false official statement when he asked appellant if he was married; and (2) whether 1SG Edmonds was interrogating or requesting a statement within the meaning of Article 31, UCMJ. The military judge essentially found that 1SG Edmonds was not conducting a law-enforcement investigation or disciplinary inquiry, but he did not specifically address whether the accused was, or reasonably should have been, considered a suspect.[8] These are questions of law that will be reviewed de novo. *United States v. Meeks,* 41 M.J. 150 (C.M.A.1994).

During the first sergeant's initial inquiry about appellant's whereabouts, 1SG Edmonds was attempting to sort out why appellant missed a formation. Upon hearing appellant's explanation, the record is clear that 1SG Edmond's concern shifted to the well-being of appellant's wife. We note that 1SG Edmonds had previously assisted appellant with personal problems associated with his purported spouse, and he wanted to ensure that this situation did not escalate into another problem that might jeopardize the welfare of appellant and his wife.

Several days later, when the first sergeant asked whether the appellant was married, 1SG Edmonds was still concerned about the welfare of appellant and his family. Appellant had stated that his wife was in the hospital but was using her ID card from a previous marriage. The first sergeant had instructed the appellant to take specific steps which would have ensured that this soldier's wife had the proper identification and authorization for health care. The incidental question about whether appellant was married was asked within the context of the first sergeant's efforts to ensure that the appellant's family was being cared for properly. We find that the first sergeant's question and overall effort were motivated by a desire to solve this soldier's problem, not to charge him with making a false official statement.[9]

 We specifically find first that 1SG Edmonds did not suspect appellant of making a false official statement. Second, under the totality of the circumstances, we are satisfied that a reasonable senior noncommissioned officer would not have suspected appellant of a false official statement, wrongful cohabitation, or BAQ fraud. Third, we find that 1SG Edmonds was not conducting a criminal interrogation or disciplinary inquiry.

Accordingly, we hold that admission of the statement made by appellant without a prior rights warning advisement was not barred by Article 31, UCMJ.

#### B. Second Statement to CID

 The second issue is whether appellant's admissions to CID on 21 April 1993—which were preceded by a proper rights warning—should have been excluded as derivative evidence because they were somehow induced by the unwarned, exculpatory statement rendered to CID on 1 April 1993. Again, our standard of review is de novo. *Meeks,* 41 M.J. at 161.

---

8. We note that, while the military judge explained his ruling on the record, he did not specifically list findings of fact. We are left to divine from his comments, within the context of the record, the essential findings of fact which supported his legal conclusion. We urge military judges to adhere to the requirements for stating essential findings of fact on the record. We commend footnote 6 in *United States v. Pa-*

*checo,* 36 M.J. 530, 533 (A.F.C.M.R.1992) to all trial practitioners.

9. We reach this conclusion even considering the first sergeant's request to see appellant's marriage certificate because that document is necessary to enroll family members in the DEERS system.

 The military judge found appellant's first statement "involuntary" only because appellant had not been warned as required by Article 31, UCMJ, and *Tempia*,[10] and we are bound by his ruling. Because appellant's first statement was not the product of actual coercion, appellant's second statement to CID is not presumed to be tainted by the first statement. In determining the admissibility of appellant's inculpatory statement, therefore, we will analyze whether it was voluntary under the totality of the circumstances. Pertinent also to our decision is whether the second statement was obtained by use of the earlier statement, or whether the second statement would have been obtained even had the first statement not been made. *Phillips*, 32 M.J. at 79; Mil.R.Evid. 304. We are mindful that the burden is on the government to show that appellant's admissions were voluntary and not obtained by use of the first unwarned statement.

 We are convinced by the facts that the government has carried its burden. First of all, the second statement was preceded by a full and accurate rights warning. Second, at least twenty days elapsed between the first interview and the second interrogation. Third, the critical fact is that appellant's first statement was exculpatory. Since appellant admitted nothing which was incriminating, it is difficult to understand how it was somehow used to induce a second, inculpatory statement. The overwhelming weight of authority in the area of derivative taint is comprised of cases in which the accused's

previous *incriminating* statement was illegally obtained and thereafter exploited to obtain a second admission or confession. *See, e.g., Oregon v. Elstad,* 470 U.S. at 309–14, 105 S.Ct. at 1293–96; *United States v. Marquardt,* 39 M.J. 239 (C.M.A.1994); *United States v. Norfleet,* 36 M.J. 129 (C.M.A. 1992); *United States v. Phillips,* 32 M.J. at 79.

We find no case in which an accused's subsequent statement was held to be tainted by a previously obtained *exculpatory* statement.[11] This is not surprising to us because, as in the case before us, the proverbial "cat" is still in the bag.[12] There is nothing which "bridges the gap" between the earlier statement and the one claimed to be tainted.[13] We find that the illegally-obtained first statement in no way caused, induced, encouraged, or coerced the appellant to make the second statement. The appellant had no reason to think, for example, "I might as well incriminate myself again because the police already know I've made an earlier incriminating statement." Special Agent Welch made reference to the first statement by telling appellant just before the rights warning that CID originally thought this was a "domestic" dispute. However, Special Agent Welch further advised appellant that based on new information, he now suspected the appellant of the offenses which he listed during the Article 31, UCMJ, warning. We conclude that this reference to appellant's first statement, standing alone, could not possibly induce ap-

10. *See supra* note 3.

11. The facts of this case are analogous to those in *United States v. Schake,* 30 M.J. 314 (C.M.A. 1990), because the first statement in both cases was exculpatory. In dicta, the Court of Military Appeals found inapplicable the presumptive taint analysis under *Elstad* and *United States v. Ravenel,* 26 M.J. 344 (C.M.A.1988), because the "appellant made no incriminating admissions as a result of his initial unwarned questioning...." *Schake, supra,* at 320. The court further found no need for cleansing advice since "there simply was no cat '... let out of the bag' ...." *Id.* at 320.

12. Compare cases in which the "cat is out of the bag," that is the suspect has divulged a "guilty secret" during an unwarned but otherwise uncoercive interrogation. The courts have recog-

nized that a subtle form of compulsion may linger because of the psychological impact of the suspect's realization that he has sealed his own fate by the previous admission. *Oregon v. Elstad,* 470 U.S. at 309–14, 105 S.Ct. at 1293–94.

13. Compare the facts in *Phillips, supra,* in which the investigator began the interview of the suspect by telling him that he was aware of the earlier investigation during which the suspect had incriminated himself. The Court of Military Appeals found that such references effectively bridged the gap between the two statements, almost as if the investigator said outright that he was relying on the earlier admissions as a starting point. There was a clear causal nexus between the two statements.

pellant to incriminate himself.[14]

We are convinced that appellant made the truthful, inculpatory statements not because he had been confronted with his prior untrue exculpatory statement, but because he was confronted with the irrefutable facts that had been gathered by CID's investigation. Primary among those facts was the revelation from Dillon County that the appellant had never been married in that jurisdiction. We agree with the military judge's conclusion that this evidence was developed independently from the information revealed in the first unwarned statement and would have been inevitably discovered through minimal investigation. The military judge found that even without appellant's first statement, CID would have interviewed Angela Lewis, appellant's acting first sergeant, SSG Lewis, and Dillon County officials. We find no reason to dispute the military judge's conclusion.

Considering all the circumstances, we are convinced that the appellant's second statement was voluntary within the meaning of Mil.R.Evid. 304, Article 31(b), UCMJ, and *Oregon v. Elstad,* 470 U.S. at 309–14, 105 S.Ct. at 1293–94. We are further satisfied that the second statement was not obtained by use of the first unwarned statement. We find that the second statement was preceded by a proper rights warning, and that appellant rationally and intelligently chose to waive those rights. Accordingly, we conclude the statement was admissible against appellant.

Having carefully reviewed the entire record, we find the remaining assignment of error to be without merit.

The findings of guilty and the sentence are affirmed.

Judge GONZALES and Judge RUSSELL concur.

---

14. In fact, we consider CID's reference to the first statement to be akin to a cleansing warning. SA Welch put appellant on notice that CID first believed his problem stemmed from a domestic dispute, but now the evidence led them to suspect him of false swearing, false official statement, fraud, larceny, and conspiracy (the offenses for which appellant was warned). Having forewarned appellant that he was now a suspect, SA Welch then fully advised appellant of his rights, to include his right to remain silent.