# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, K.M. MCDONALD, M.C. HOLIFIELD**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**CONRAD A. ROCKENHAUS**
**INFORMATION SYSTEMS TECHNICIAN FIRST CLASS (E-6), U.S. NAVY**

**NMCCA 201300409**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged**: 25 June 2013.
**Military Judge**: Col Daniel J. Daugherty, USMC.
**Convening Authority**: Commandant, Naval District Washington, Washington Navy Yard, Washington, DC.
**Staff Judge Advocate's Recommendation**: LCDR J.D. Pilling, JAGC, USN.
**For Appellant**: Capt David A. Peters, USMC.
**For Appellee**: LCDR Jeremy R. Brooks, JAGC, USN; Maj Crista Kraics, USMC.

**28 August 2014**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a special court-martial, convicted the appellant, contrary to his pleas, of seven specifications of making false official statements and four specifications of wearing an unauthorized ribbon or device, in violation of Articles 107 and 134, Uniform Code of Military

Justice, 10 U.S.C. §§ 907 and 934. The military judge sentenced the appellant to a reprimand, confinement for 157 days, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged and, except for that part of the sentence extending to a bad-conduct discharge, ordered it executed.[1]

The appellant asserts three assignments of error: (1) that the military judge erred in not suppressing the appellant's statement to the Naval Criminal Investigative Service (NCIS); (2) that the appellant was denied his right to an independent evaluation under RULE FOR COURT-MARTIAL 706, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.); and, (3) that his conviction of Specifications 1, 2, 3, 7, and 8 of Charge II and Specifications 3, 4, 5, and 9 of Charge IV are legally and factually insufficient.[2]

After carefully considering the record of trial and the submissions of the parties, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

### Background

In January 2012, the appellant submitted to Hospitalman Second Class (HM2) F, the limited duty coordinator at Walter Reed National Military Medical Center (WRNMMC), several documents purporting to show the appellant was entitled to wear the Purple Heart Medal, the Joint Service Commendation Medal, the Combat Action Ribbon, and the Afghanistan Campaign Medal, as well as qualified as an Enlisted Expeditionary Warfare (EXW) Specialist. He also submitted documents indicating he had been entitled to imminent danger pay for deployments to Cote D'Ivoire and Afghanistan. The appellant submitted these documents in the

---

[1] We note the CA's action does not include a copy of the letter of reprimand as required by section 0152 of the Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F (26 Jun 2012). We have been informed the CA has not and does not intend to issue a letter in this case.

[2] These three issues are raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). We note the appellant was found not guilty of Specification 3 of Charge II and Specification 9 of Charge IV.

2

hope of gaining admission to a program reserved for wounded veterans.

During an investigation into anonymous e-mails targeting the appellant and his family, NCIS asked for and received the appellant's permission to search his personal computers. A forensic examiner discovered several files on the appellant's computer that contained images of award citations, NAVPERS 1070/613 forms, and signatures of certifying officials. These images match in material aspects the documents the appellant provided to HM2 F, and appear to have been "cut and pasted" to create the documents. Additionally, at trial, Chief Personnel Specialist (PSC) C testified that he did not sign the NAVPERS 1070/613 form purporting to authorize the appellant to wear the EXW device, as PSC C had no authority to do so.

The appellant first met Special Agent (SA) D when the appellant came to NCIS on 19 December 2012 to discuss the threatening emails. The appellant was not a suspect at that time. However, when SA D noted the ribbons and devices the appellant wore, including the EXW device, the Purple Heart Medal, a Navy-Marine Corps Commendation Medal with a combat "V", and a Combat Action Ribbon, SA D inquired as to the Purple Heart. The appellant told him it was for an injury caused by an improvised explosive device in Afghanistan.

Based on a 28 December 2012 review of the appellant's service record, SA D became suspicious and spoke to the appellant's chain of command on 10 January 2013. He then learned of an earlier command investigation into the appellant's wearing of unauthorized medals and devices.

On 10 January 2013 the appellant arrived at the home he had been residing in and was in the process of vacating and found someone had turned on a gas valve and lighted the fireplace. He and a neighbor entered the home and secured the gas valve and fireplace. When the appellant was interrogated by SA D later that day, SA D advised the appellant of his rights under Article 31(b), UCMJ, informing him he was suspected of, *inter alia*, making false statements and wearing medals he was not authorized to wear. Despite being on medication and having earlier spent time in a gas-filled house, the appellant was lucid and clear-headed, and did not appear to be under the influence of drugs or

alcohol.[3]  The appellant waived his rights and provided a statement.  When asked about his deployments, he ultimately admitted, "I never deployed."

Shortly after the appellant was placed in confinement, his civilian defense counsel (CDC) requested that the CA order an inquiry into the appellant's mental state pursuant to R.C.M. 706.  The CDC later renewed the request, additionally asking that the inquiry be conducted by personnel not assigned to Naval Hospital Portsmouth.  This request was based on an alleged "history of distrust" between the appellant and his providers at Naval Hospital Portsmouth.  Although an inquiry was conducted, the record is unclear as to who ultimately participated in the appellant's R.C.M 706 panel.

### Statement to NCIS

We review a military judge's decision to admit or exclude evidence for an abuse of discretion.  *United States v. Mott*, 72 M.J. 319, 329 (C.A.A.F. 2013).  At trial, the CDC moved to suppress the appellant's statement on three bases:  First, that it was unknowing and involuntary due to the appellant's medications and gas exposure; second, that any statement to NCIS was tainted by the earlier investigation by the appellant's chain of command that did not include warning the appellant of his rights under Article 31(b), UCMJ; and, third, that it lacked corroboration.  As it is unclear on which basis the appellant's assignment of error rests, we will examine all three.

Considering the sworn testimony of both special agents present at the 10 January interrogation, as well as a careful review of the videotaped interrogation in question (Prosecution Exhibit 29), we are convinced the appellant knowingly, intelligently and voluntarily waived his right to remain silent.

While the appellant's chain of command may have questioned him regarding his awards and devices without proper warnings, this did not taint the subsequent NCIS interrogation.  The questioning by his chain of command occurred nearly 6 months before the appellant met with NCIS.  Special Agent D had formed his suspicions before talking with the appellant's chain of

---

[3] This is supported by both SA D's testimony and a review of the videotaped interrogation.

4

command, advised the appellant of his rights under Article 31(b), UCMJ, before questioning him, and did not inform the appellant that he was aware of any statements the appellant may have made to his chain of command. Additionally, we find no evidence of aggravating circumstances such as intentional disregarding of constitutional or codal rights. *See United States v. Marquardt,* 39 M.J. 239 (C.M.A. 1994).

We are also satisfied that the appellant's confession was sufficiently corroborated by other evidence in the case. Specifically, we considered the numerous images found on the appellant's personal computer indicating the appellant created the documents purporting to prove authorization to wear deployment-related awards. Accordingly, we find this assigned error to be without merit.

### R.C.M. 706 Examination

Questions regarding conflicts of interest involving a R.C.M. 706 board are mixed questions of law and fact and are reviewed *de novo. United States v. Best,* 61 M.J. 376, 381 (C.A.A.F. 2005). There is no *per se* rule precluding a practitioner from participating in a sanity board when that practitioner has had prior involvement with the subject. *Id*. at 387. Instead, the test is whether an actual conflict exists based on that prior involvement. *Id.* As the appellant cites no facts in support of an actual conflict, and we find nothing in the record to indicate the appellant did not receive a fair and independent examination, this assigned error is without merit.

### Legal and Factual Sufficiency

We review questions of legal and factual sufficiency *de novo. United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is whether any rational trier of fact could have found that the evidence met the essential elements of the charged offenses, viewing the evidence in a light most favorable to the Government. *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987). The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the fact that we did not personally observe the witnesses. *Id.* at 325. Here, we find in the affirmative on both tests.

5

As to the specifications under Charge II, HM2 F testified that the appellant submitted the false forms and citations to him in HM2 F's official capacity as the WRNMMC limited duty coordinator. The appellant's admission to having never deployed, PSC C's testimony that he did not sign the EXW qualification form, and the various images of fake documentation found on the appellant's computer all support a finding that these forms and citations were false, that the appellant knew they were false, and that he submitted them with the intent to deceive. This same evidence, combined with testimony that the appellant wore the ribbons and device as alleged, and that this was to the prejudice of good order and discipline, supports the findings of guilt under Charge IV.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the Government, we are convinced that a reasonable trier of fact could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

## Conclusion

The findings and only so much of the sentence as includes 157 days' confinement and a bad-conduct discharge are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

6